CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
SEP 1 3 2007
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARION WAYNE JORDAN, | ) | |
|     Petitioner, | ) | Civil Action No. 7:06cv00115 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. Norman K. Moon |
|     Respondent. | ) | United States District Judge |

Petitioner, Marion Wayne Jordan, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The action is currently before the court on the respondent's motion to dismiss. For the reasons that follow, the court will grant the respondent's motion.

### Background

On May 29, 2002, state and local law enforcement officers conducted surveillance flights in Patrick County as part of a marijuana eradication program. (Joint Appendix ("J.A.") at 108.) During the course of the flights, officers observed marijuana plants growing in buckets in the back of a dump truck on Clarkhouse Farm Road. (J.A. at 108-09.) The truck was located on property owned by Cecil Corns. (J.A. at 109.) Officers subsequently traveled to the property, where they located the dump truck and discovered 968 marijuana plants growing in and near the truck bed. (J.A. at 109-12.)

On May 30, 2002, officers interviewed Cecil Corns' son, Barry Corns ("Barry"), who admitted that he was involved in the marijuana growing operation. (J.A. at 113.) Barry also told the officers that he had "other friends" who were involved with him. (J.A. at 114.) Barry was not arrested at that time, because he agreed to assist the officers in their investigation of the petitioner, Marion Wayne Jordan ("Wayne") and his brother David Michael Jordan ("Michael"). (J.A. at 114.) Neither Wayne nor his brother were aware of Barry's agreement to cooperate in the investigation.

(J.A. at 114.)

That same day, officers outfitted Barry with a transmitting device and followed him to Michael's residence in Stokes County, North Carolina. (J.A. at 114-16.) Barry met Michael outside the residence and they engaged in a conversation that was monitored and recorded by Investigator Roger Wilson ("Investigator Wilson") of the Patrick County Sheriff's Department. (J.A. at 114-17.) During the conversation, Michael and Barry discussed the seizure of the marijuana. Barry told Michael that he had saved approximately twenty marijuana plants that the officers had overlooked. (J.A. at 207, 210.) Michael agreed to meet Barry the following day to assist him in planting the remaining plants, and advised Barry that he would talk to Wayne. (J.A. at 210-11, 225.) Jordan also repeatedly acknowledged his involvement with the marijuana plants, and agreed that he and his brother would help Barry hire an attorney. (J.A. at 207-08, 210-15, 217-18, 221, 225.)

On June 24, 2002, Investigator Wilson set up a video and audio recording device inside Barry's residence and subsequently recorded a conversation between Barry and Wayne. (J.A. at 119-20.) During their conversation, Wayne stated that "most of" the plants he had were "in that dump truck." (J.A. at 231.) He also stated that he had previously told Michael that "this dump truck has got to get out of here . . . ." (J.A. at 233.) Further, he expressed regret about Barry's mother being affected by the events that had transpired. (J.A. at 230.) Wayne also agreed that he and Barry would plant the remaining marijuana plants the following day. (J.A. at 238-39.)

On June 25, 2002, officers conducted surveillance at a prearranged location in Patrick County. (J.A. at 187.) The officers laid out approximately fourteen of the plants that had been confiscated on May 29, 2002, in an area where Barry would find them. (J.A. at 187-89.) Barry and Wayne arrived at the location around 7:00 p.m. (J.A. 191.) Investigator Gary Brown observed Wayne planting the marijuana plants, which took about an hour. (J.A. at 189.)

2

On August 22, 2002, Wayne and Michael were charged in a three-count indictment returned by a federal grand jury in the Western District of Virginia. Count One charged the defendants with conspiring to possess with the intent to manufacture, distribute, or dispense marijuana, in violation of 21 U.S.C. § 846. Count Two charged the defendants with possessing 100 or more marijuana plants with the intent to manufacture, distribute, or dispense marijuana, in violation of 21 U.S.C. § 841. Count Three charged the defendants with possessing 100 or less marijuana plants with the intent to manufacture, distribute, or dispense marijuana, in violation of 21 U.S.C. § 841.

On January 26, 2003, Barry died in an unrelated farming accident. The government subsequently filed a motion to admit the audio tape recording of the conversation between Michael and Barry and the video tape recording of the conversation between Wayne and Barry. On April 22, 2003, the government moved to dismiss Count Three of the indictment, due to Barry's unavailability to testify at trial. The court also held a hearing on the government's motion in limine, and determined that both tapes would be admissible at trial.

Following a jury trial, Wayne and Michael were convicted of Counts One and Two of the indictment. On July 14, 2003, Wayne was sentenced to a total term of imprisonment of 120 months, followed by an eight-year period of supervised release. The judgment and conviction order was entered on August 15, 2003. That same day, the court issued an opinion in which it concluded that the video and audio tapes were properly admitted into evidence at trial. The court found that the tapes were admissible both as co-conspirator statements made in furtherance of a conspiracy under Rule 801(d)(2)(E) of the Federal Rules of Evidence, and also as statements against penal interest under Rule 804(b)(3).

Wayne and Michael subsequently filed a joint appeal to the United States Court of Appeals for the Fourth Circuit. On appeal, the Jordans challenged the court's ruling as to the admissibility

3

of the audio and video tapes. The Jordans also argued that the tapes were inadmissible hearsay and that their admission violated their right to confront adverse witnesses. On April 13, 2005, the Fourth Circuit found that this court did not commit reversible error by admitting the tapes and affirmed the Jordans' convictions for the reasons stated by this court.

Wayne filed the instant § 2255 motion on February 23, 2006. Wayne argues that trial counsel was ineffective on several grounds, including:

1. Failing to object to Wayne being denied his right to confront his accuser in several instances;

2. Failing to object to hearsay testimony by Instigator Wilson being admitted;

3. Failing to object to whether the conspiracy continued after Barry agreed to cooperate with the police;

4. Failing to object to Investigator Wilson identifying Wayne's voice in the video tape;

5. Failing to object to Investigator Wilson performing dual roles for the prosecution, as case agent and expert witness;

6. Failing to object to the prosecution and Investigator Wilson improperly vouching for the credibility of Barry Corns;

7. Failing to object to "irrelevant conversation" being admitted in the video-taped conversation;

8. Failing to obtain an expert witness to challenge the contents of the audio tape admitted into evidence;

9. Failing to object to Wayne being convicted under § 841 for possession of 100 or more marijuana plants when they were actually seedling or cuttings; and

10. Failing to object to the Pre-Sentence Investigation Report's ("PSR") calculation of his offense level.

On July 14, 2006, Wayne filed a motion to file a supplemental argument in his § 2255 motion, which the court granted. In his motion, Wayne argued that the court improperly enhanced his sentence based on a prior conviction.

4

On that same day, the United States filed a motion to dismiss, arguing that Wayne's claim that counsel failed to object to the admission of the tapes into evidence is wholly unsupported by the record and, further, that any negligence on the part of counsel did not result in prejudice to Wayne because his own statements on the video tape were admissible as was the evidence of his planting marijuana plants subsequent to the video-taped conversation. Therefore, the United States argued, Wayne failed to meet the two-prong test under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In response to the motion to dismiss, Wayne filed a motion to strike the government's response for failure to respond to all of his claims. The court then directed the United States to respond to Wayne's motion. The government responded, arguing that the Fourth Circuit affirmed this court's admission of the tapes into evidence, finding that they were non-testimonial for the purposes of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). The government further argued that since <u>Crawford</u> was not decided until after Wayne's trial, counsel could not have been ineffective in failing to raise that claim at trial. The United States then filed a supplemental response arguing that under <u>Whorton v. Bocking</u>, 127 S.Ct. 1173 (2007), <u>Crawford</u> does not apply retroactively. In addition, by separate response, the government argued that Wayne's claim regarding his sentence enhancement had no merit. In his final reply, Wayne included a new claim that counsel was ineffective in failing to file a petition for writ of certiorari to the United States Supreme Court after he led Wayne to believe that he would.

## Discussion

Wayne's ineffective assistance claims are governed by the United States Supreme Court's decision in <u>Strickland</u>, wherein the Court set forth a two-prong test for evaluating ineffective assistance claims. <u>Strickland</u>, 466 U.S. at 669. The defendant must show that his counsel's performance fell "below an objective standard of reasonableness," and that the "deficient

5

performance" must have "prejudiced the defense." Id. at 687-88. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

### A. Confrontation Clause and Hearsay Claims

Wayne raises several ineffective assistance claims, many of which ultimately allege that counsel was ineffective in failing to challenge the admission of the video and audio tapes, which "denied [Wayne] the opportunity to confront and cross-examine his accuser, Barry Corns" and violated the hearsay rule.

On direct appeal, counsel argued that this court erred in admitting into evidence the audio and video tapes. Counsel argued that the tapes were inadmissible hearsay and that, by admitting them, Wayne was denied his right to confront the witnesses against him. The United States Court of Appeals for the Fourth Circuit found no reversible error in the admission of the tapes and affirmed the convictions. United States v. Jordan, 127 Fed. Appx. 646 (4th Cir. 2005). The Fourth Circuit found that the tapes were admissible both as co-conspirator statements made in furtherance of a conspiracy, and also as statements against penal interests. Fed. R. Evid. 801(d)(2)(E) and 804(b)(3). The court also found that even if the tapes had been erroneously admitted into evidence, any error was harmless, given that Wayne's statements in which he admitted his involvement with the marijuana plants, as corroborated by exhibits and testimony by police witnesses, clearly proved his guilt beyond a reasonable doubt.

A well-worn tenet of § 2255 proceedings is that a petitioner may not "recast, under the guise of collateral attack, questions fully considered" by the Court of Appeals. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Accordingly, where a claim has already been determined by the United States Court of Appeals for the Fourth Circuit, the court cannot revisit it

6

here. See generally Davis v. United States, 417 U.S. 333, 342 (1974); Boeckenhaupt, 537 F.2d at 1183. Therefore, the court need not address the merits of the admissibility of the tapes as this claim has already been addressed by the Fourth Circuit. In addition, because the Fourth Circuit has already determined that there was no error in the admission of the tapes, it can also be said that there was no obvious basis for an objection to their admission. Counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." See Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987). Therefore, Wayne's claims of ineffective assistance relating to objections based on hearsay evidence and the confrontation clause necessarily fail.

### B. Continuation of the Conspiracy Claim

Wayne argues that counsel was ineffective in failing to object to the issue of whether the conspiracy continued after Barry agreed to cooperate with the police. It is uncontradicted that a conspiracy existed between Barry, Wayne, and David prior to the seizure of the marijuana plants by the police on May 29, 2002. Furthermore, "[w]here police have frustrated a conspiracy's specific objective, but conspirators, unaware of that fact, have neither abandoned the conspiracy nor withdrawn, these special conspiracy related dangers remain as does the conspiracy's essence–the agreement to commit the crime." United States v. Recio, 537 U.S. 270, 270-71 (2003). Thus, even though Barry agreed to cooperate with the police and the conspiracy's object to manufacture and distribute marijuana was defeated, the conspiracy to commit the crime continued. Wayne and Barry had a conversation concerning Wayne's role in the conspiracy, his ownership of the plants, and his intent to continue the conspiracy by planting the marijuana plants that were not confiscated. Wayne planted the marijuana plants on June 25, 2002. Accordingly, the court finds that the conspiracy continued after Barry's agreement with the police and counsel was not ineffective for failing to object to a legally frivolous claim. See Clanton, 826 F.2d at 1359.

7

C.      **Improper Sentence Enhancement Claim**

Wayne argues that his sentence was improperly enhanced based on a prior drug conviction. Wayne does not dispute that he was previously convicted of a felony drug offense prior to the drug offense at issue. However, Wayne argues that, because his prior conviction was more than fifteen years old at the time of his sentencing, the court improperly enhanced his sentence by considering that conviction. Wayne relies on U.S.S.G. § 4A1.2(e) as support for this claim.

The court first notes that Wayne's sentence was not enhanced. Rather he was subject to a statutory mandatory minimum as to both counts of conviction under 21 U.S.C. § 841. Title 21 U.S.C. § 841(b)(1)(B)(vii) states, in pertinent part, that a person convicted of possession of more than 100 marijuana plants with the intent to distribute shall, after a prior conviction for a felony drug offense has become final, be sentenced to a term of imprisonment which may not be less than ten years and not more than life imprisonment. The presentence report indicated that, based on a total offense level of 24 and criminal history category of IV, the guideline range for imprisonment for Wayne was 77 to 96 months. However, where the statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily minimum sentence shall be the guideline sentence. U.S.S.G. § 5G1.1(b). Accordingly, Wayne's guideline sentence was determined to be 120 months. On July 14, 2003, this court sentenced Wayne to 120 months on Counts One and Two, to be served concurrently. It is clear that Wayne's sentence was appropriate and not improperly enhanced. Therefore, this claim will be dismissed.[1]

---

[1] Wayne's reliance on the Sentencing Guidelines is misplaced as, unlike the Guidelines, 21 U.S.C. § 841 does not restrict the age of the prior felony drug offense which may be considered and the statute controls. See U.S. v. Gullett, 75 F.3d 941 (4th Cir. 1996) (holding that the "Sentencing Guidelines cannot trump the edicts of the federal criminal statutes" (quoting United States v. Holloway, 991 F.2d 370, 373 (7th Cir. 1993))). The only requirement under 21 U.S.C. § 841 is that the prior conviction meet the definition of a "felony drug offense," as stated in 21 U.S.C. § 802(44). According to 21 U.S.C. § 802(44), the term "felony drug offense" means an "offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts

8

D.  **Remaining Claims**

The United States failed to address all of Wayne's remaining claims, however, the court finds that they nevertheless have no merit.

1.  **Dual Roles of Wilson**

Wayne contends that counsel should have objected because Investigator Wilson performed "dual roles" for the prosecution, "as case agent and expert witness." This essentially argues that a law enforcement officer active in a criminal case is limited at trial to testifying as a lay witness. In effect, Wayne claims that Federal Rule of Evidence 702 (which states that *any witness* [italics added] may be "qualified as an expert by knowledge, skill, experience, training, or education," and "may testify thereto in the form of an opinion") somehow excludes police officers. The lack of merit to this argument is evidenced both by a plain reading of the rule and by innumerable cases in which police officers properly testified in an expert capacity. United States v. Encarnacion, 1991 U.S. App. LEXIS 2674, 6-7 (4th Cir. 1991) ("appellants attack the qualifications of the police officers to testify as expert witnesses on the subject of cocaine trafficking . . . . We find no abuse of discretion in qualifying the officers as experts."). "Courts have overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror." United States v. Thomas, 74 F.3d 676, 682 (6th Cir. 1996); see also United States v. Nichols, 184 Fed. Appx. 532, 537 (6th Cir. 2006) ("Generally, police officers with the requisite qualifications are permitted to testify as both fact witnesses and expert witnesses." (quoting United States v. Harris, 192 F.3d 580, 589 (6th Cir. 1999))); United States v.

---

conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." Wayne's prior felony drug offense for possession and manufacturing of marijuana meets this definition. Accordingly, his conviction under 21 U.S.C. § 841 was proper.

9

Humphreys, 468 F.3d 1051, 1052 (7th Cir. 2006) (ATF special agent qualified as expert because "he was trained in firearms identification and had identified between 1,500 and 2,000 firearms in his 25 years as a law enforcement.").

### 2. Improper Vouching

Wayne claims that counsel was ineffective in failing to object to the prosecution and Investigator Wilson improperly vouching for the credibility of Barry Corns. A prosecutor may neither vouch for nor bolster the testimony of a government witness in arguments to the jury. United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997). "Vouching occurs when the prosecutor indicates a personal belief in the credibility or honesty of a witness." Sanchez, 118 F.3d at 198. It cannot be vouching when no statement is made about one's personal belief in the truth of the statement. In this case, Wayne has identified no specific remarks or conduct by either the United States or its witness, Investigator Wilson, as support for his claim, and the court's review of the record discloses no impropriety. Counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." See Clanton, 826 F.2d at 1359. Since there was no obvious basis for counsel to object in this case, the court cannot find that counsel was ineffective. Therefore, the court dismisses this claim.[2]

### 3. Allegedly Irrelevant Conversation in the Videotape

Wayne claims that counsel was ineffective in failing to move to have irrelevant portions of the video-taped conversation removed from the video-taped recording. However, Wayne points to

---

[2] To the extent that Wayne's claim can be construed as one of prosecutorial misconduct, it also fails. A claim of prosecutorial misconduct is reviewed to determine whether the conduct complained of so infected the trial with unfairness as to make the resulting conviction a denial of due process. United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002). To prevail under this standard, Wayne must show that "the prosecutor's remarks or conduct were improper and, . . . that such remarks or conduct prejudicially affected his substantial rights" so as to deprive him of a fair trial. Id. Since Wayne does not identify any specific remarks or conduct by the Assistant United States Attorney that were allegedly improper, the court cannot find that the prosecutor acted improperly.

no authority indicating that the claimed "irrelevant" portions were inadmissible as against him. Moreover, the Fourth Circuit has already found that the tapes were properly admitted. Accordingly, the court finds that Wayne has failed to show that counsel was ineffective or that the admission of the "irrelevant" portions of the conversation prejudiced the outcome of his case.

### 4. Wilson's Identification of Wayne on the Video Tape

Wayne also claims that counsel was ineffective in failing to object to Investigator Wilson identifying his voice on the video recording because Investigator Wilson was not an expert witness. This claim, in effect, challenges the admission of the video tape by arguing Investigator Wilson's identification was inadmissible to authenticate it. While it is true that the prosecution had not qualified Investigator Wilson as an expert in voice-identification, in many situations, a witness need not be qualified as an expert to testify in the form of an opinion. One such situation is the identification of another's voice. Generally, a lay witness may give an opinion if it is rationally based on his personal observations, it is helpful to a clear understanding of his testimony, and it is not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701(b); see also United States v. Zepeda-Lopez, 478 F. 3d 1213 (10th Cir. 2007). Lay witnesses are frequently used at trial to identify voices – whether heard in person or on a recording – based on familiarity gained before or after the occasion in issue. See, e.g., United States v. Bice-Bey, 701 F.2d 1086, 1090 (4th Cir. 1983) (FBI agents properly identified voice in recorded telephone conversation as that of defendant when agents acquired their familiarity with defendant's voice through conversations that occurred after recorded telephone conversation); 901 Weinstein's Federal Evidence § 901.06 ("This familiarity [with identified speaker's voice] can be acquired at any time, either before or after the occasion that is at issue in the litigation.").

Moreover, when authenticating a recording pursuant to Federal Rule of Evidence 901(b)(5),

11

the witness need only have limited familiarity with the identified speaker's voice. United States v. Lampton, 158 F.3d 251, 259 (5th Cir. 1998) (where one personal contact with speaker was sufficient to meet the requirements of Rule 901(b)(5) when agent identified speaker's voice in recorded telephone conversations); United States v. Vega, 860 F.2d 779, 788 (7th Cir. 1988) (minimal familiarity with person's voice is sufficient to sustain admissibility of voice identification evidence); see also United States v. Cerone, 830 F.2d 938, 949 (8th Cir. 1987). In this case, Investigator Wilson gained familiarity with Wayne's physical appearance and voice when he monitored the live video and audio recording of the June 24, 2002 encounter. Therefore, because his identification was admissible to authenticate the videotape, counsel would have no reasonable objection and was not ineffective in failing to object.

A second challenge to the admissibility of the videotape can be construed from Wayne's § 2255 Petition at paragraph 11. The transcript indicated that the court itself had some difficulty identifying Wayne when watching the videotaped encounter. Wayne argues, therefore, that Investigator Wilson may not actually have gained sufficient familiarity with Wayne's voice to identify it on the videotape and that, absent some other authenticating evidence, the videotape should not have been admitted. At trial, Investigator Wilson's identification of Wayne's voice was in part based on hearsay conversations that he had with Barry. Prior to trial, Barry told Investigator Wilson that the man with whom he had been conversing was Wayne. However, because Barry died in an unrelated accident before trial, he was unavailable to so testify at trial. Under this theory, when Investigator Wilson "identified" Wayne's voice on the tape, he was not actually stating that he personally recognized the voice to be Wayne's. Instead, he was relating Barry's prior identification of Wayne. Indeed, other than his observations while monitoring the arguably grainy live video, Investigator Wilson had no firsthand familiarity with Wayne's voice. Without any familiarity with

12

Wayne, Investigator Wilson would have been totally reliant on Barry's prior identification – hearsay. Reading the facts in this light, the real issue becomes whether Barry's hearsay statement used to authenticate the video was admissible under some exception.

Clearly, because Investigator Wilson's in-court identification implicitly relied upon Barry's out-of-court statement (which was offered for the truth of the matter), it was hearsay. See Federal Rule of Evidence 801(c). However, Barry's statement fell within the recognized exception of "statement against interest." Federal Rule of Evidence 804(b)(3) notes that, if the declarant is "unavailable" as a witness, "[a] statement which was at the time of its making . . . so far tended to subject the declarant to civil or *criminal liability* [italics added] . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true" is not excluded by the hearsay rule. Id.

In this case, the declarant, Barry, died prior to trial in a farming accident on January 26, 2003. Federal Rule of Evidence 804(a)(4) notes that a witness's death renders him "unavailable" for the purpose of admitting any hearsay exception stated in Rule 804(b). Id. The facts of this case show that Barry's identification to Investigator Wilson of Wayne's voice on the videotape was a statement against Barry's penal interest, and thus a hearsay exception pursuant to Federal Rule of Evidence 804(b)(3).

Before he was confronted by law enforcement about his role in the manufacturing of marijuana on May 30, 2002, Barry had been one of Wayne's co-conspirators. Because Barry agreed to assist officers in their investigation of his criminal partners, he was not arrested. However, nothing in the record indicates that Barry was promised complete immunity for his assistance. Indeed, it is likely that he was vaguely offered future "consideration" for any help he could provide. In such a situation, despite working covertly for the police, Barry remained vulnerable to future prosecution

13

and any statements he made implicating himself in the conspiracy to grow marijuana could be used against him. Moreover, the fact that Barry died before trial is irrelevant. As his death was completely unexpected, it is reasonable to suggest that Barry would have lived long enough to be given a reduced charge for his role in the conspiracy.

The secretly videotaped conversation that Barry had with Wayne on June 24, 2002, included statements suggesting Barry's involvement – albeit limited – in the cultivation of marijuana on his father's land. When Barry subsequently told Investigator Wilson that the other person in the videotape was Wayne, Barry further implicated himself in the conspiracy by identifying a fellow partner in crime. Further, the videotaped conversation of Barry and Wayne discussing the manufacture of marijuana unquestionably would have been harmful to Barry if he had later been criminally charged under 21 U.S.C. 841 (possession of 100 or more marijuana plants), 21 U.S.C. 846 (related conspiracy), or even a lesser charge. For this reason, Barry's identification of Wayne– used later by Investigator Wilson at trial – was against his penal interest and falls under the hearsay exception of Federal Rule of Evidence 804(b)(3).

Furthermore, even if the Barry's identification of Wayne's voice on the videotape were excluded as inadmissible hearsay, the videotape itself still could have been properly admissible because Investigator Wilson authenticated how the videotape was made. In addition, because the videotape adequately depicted Wayne's person and statements, it was largely self-authenticating.

Investigator Wilson, while not present in the house and thus unable to witness first-hand the June 24, 2002 conversation between Barry and Wayne, did testify as to the process of outfitting Barry with the transmitting device, and his subsequent live monitoring and recording of the encounter. This proved the accuracy of the production process, which is necessary when there is no authenticating testimony from a witness who personally observed the events depicted in the

14

Case 7:06-cv-00115-NKM-mfu   Document 39   Filed 09/13/07   Page 14 of 18   Pageid#: 148

videotape. See, e.g., Wilson v. Commonwealth, 29 Va. App. 236, 239 (1999).

Regarding authentication of a videotape, an exhibit for prosecution, the key question of Federal Rule of Evidence 901 (which states the basis requirement for admission of an exhibit) is whether "the matter in question is what its proponent claims." Id. A videotape which clearly identifies the persons depicted in it may be self-authenticating (i.e., does not require additional authentication testimony from a witness present at the scene depicted in the video). See, e.g., United States v. Damrah, 412 F.3d 618, 628 (6th Cir. 2005) (videotape seized by police of defendant soliciting monetary donations of behalf of Islamic terrorist organizations admitted without witness present at scene). Despite the court's initial difficulty in viewing the video, it sufficiently showed the conversation between Wayne and Barry such that it was admitted. Therefore, the videotape would have been admissible even in the absence of Investigator Wilson's identification of Wayne's voice (whether based on personal familiarity or Barry's hearsay statement).

Finally, because the Fourth Circuit Court of Appeals already determined that the videotape was properly admitted, Wayne's current challenge to its admissibility has no merit. Therefore, Wayne has not shown that counsel's failure to object to investigator Wilson's identification was deficient or that, but for counsel's alleged deficiency, the outcome of his case would have been different.

### 5. Defense Expert to Challenge Contents of Audio Tape

Wayne claims that counsel was ineffective in failing to obtain an expert to challenge the contents of the audio tape. Conclusory allegations are insufficient to establish the requisite prejudice under Strickland. United States v. Terry, 366 F.3d 312 (4th Cir. 2004). In his petition and all of his responses, Wayne does not identify what "contents" the expert could have challenged, what the expert could have testified to, or how the expert's testimony would have affected the outcome of his

15

case. Accordingly, the court finds that Wayne has not demonstrated either prong of <u>Strickland</u> and, therefore, his claim fails.

### 6. Marijuana Seedlings and Cuttings

Wayne also claims that counsel was ineffective in failing to object to Wayne's conviction under 21 U.S.C. § 841 for 100 or more marijuana plants when actually they were only marijuana seedlings and cuttings. However, the record does not support Wayne's claim. A marijuana plant is "an organism having leaves and a readily observable root formation." U.S.S.G. § 2D1.1 cmt. n.17. Other circuits have held that, "cuttings and seedlings are not 'marihuana plants' within the meaning of 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1(c) unless there is 'some readily observable evidence of root formation.'" <u>United States v. Foree</u>, 43 F.3d 1572, 1581 (11th Cir. 1995) (quoting <u>United States v. Edge</u>, 989 F.2d 871, 877 (6th Cir. 1993)); <u>see also</u> <u>United States v. Bechtol</u>, 939 F.2d 603, 604 (8th Cir. 1991) (a cutting with "root hairs," viz., "fine projections coming from the stem," is a "plant" for purposes of the sentencing guidelines). In this case, Investigator Wilson testified that he found a "bed of marijuana plants growing." (J.A. at 109.) He further states that he personally looked at the 968 individual marijuana plants and, based on his training and experience, determined that they were all plants. (J.A. at 111.) Accordingly, the court finds that no reasonable objection existed regarding seedling or cuttings. Again, counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis," and therefore Wayne's claim fails. <u>See</u> <u>Clanton</u>, 826 F.2d at 1359.

### 7. PSR's Calculation of Offense Level

Wayne alleges that counsel was ineffective in failing to object to the PSR's calulation of his offense level. However, Wayne does not indicate what errors existed in his report, what counsel should have objected to, or how any objection would have changed the outcome of the

16

case. Therefore, the court finds that his conclusory allegations are insufficient to establish the requisite prejudice under Strickland. Terry, 366 F.3d at 312.

### 8. Petition for Writ of Certiorari

An amendment to a pending motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, is subject to the one-year statute of limitations set forth in § 2255 para. 6 and is properly denied as untimely unless the amendment relates back to a timely raised claim, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. Mayle v. Felix, 545 U.S. 644, 664 (2005); See United States v. Pittman, 209 F.3d 314 (4th Cir. 2000). "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." Mayle, 545 U.S. at 664.

In this case, Wayne's conviction became final on August 4, 2005, 90 days after the Fourth Circuit Court of Appeals issued a mandate affirming his conviction on May 6, 2005. Therefore, he had one-year, or until August 7, 2006, to file a § 2255 challenging his conviction and sentence (365 days from August 4, 2005 would be August 6, 2006, however August 6, 2006, is a Sunday, therefore he would have had until the following Monday, August 7, 2006, to file his motion). Wayne apparently signed, dated and submitted his reply, which includes the instant claim, to prison officials for mailing on March 13, 2007. See, e.g., Lewis v. Richmond City Police Depot, 947 F.2d 733 (4th Cir. 1991) (inmate's §1983 action is commenced for purposes of the statute of limitations as soon as he delivers his complaint to prison authorities for mailing). None of the claims or issues Wayne raised in his timely § 2255 motion or in his supplement concerns this appellate issue. Therefore, the court dismisses this claim as untimely filed.

### Conclusion

For the reasons stated, the court will grant the respondent's motion to dismiss. The Clerk is

directed to send a certified copy of this Memorandum Opinion and the accompanying Order to the petitioner.

ENTER: This 13th day of September, 2007.

/s/ Norman K. Moon
United States District Judge